IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CHRIS A.K., | CV 20–128–M–DWM |
| Plaintiff, | |
| v. | OPINION and ORDER |
| ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits under Title II of the Social Security Act. The Commissioner's denial of benefits is affirmed.

### LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Id.* (internal quotation marks omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation

1

marks omitted). "If evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the ALJ. *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1998). Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless; that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (as amended) (internal quotation marks omitted).

A claimant for disability benefits bears the burden of proving that disability exists. 42 U.S.C. § 423(d)(5). Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled only if his impairments are so severe that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other substantial gainful activity in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In determining disability, the ALJ follows a five-step sequential evaluation process. *Tackett*, 180 F.3d at 1098; 20 C.F.R. § 404.1520(a)(4)(i)-(v). The process

begins, at the first and second steps, "by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). "If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement." *Id.* "If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functioning capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work." *Id.* At step five, the burden shifts to the Commissioner. *Tackett*, 180 F.3d at 1098. "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Id.*

## BACKGROUND

On June 2, 2014, Plaintiff protectively filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act. 42 U.S.C. §§ 401–33; AR 313–19. He alleged disability beginning December 1, 2012. AR 313; *see* AR 92, 115. His claim was initially denied on December 9, 2014. AR 167–79, and upon reconsideration on August 13, 2015, AR 195–213. Plaintiff filed a written request for hearing, AR 222–23, which was held by video on October 25, 2017, by Administrative Law Judge ("ALJ") Sharilyn Hopson, *see*

3

AR 112–35. Plaintiff testified, as did vocational expert Susan L. Allison. *See id.* Plaintiff was represented by non-attorney representatives.[1] *Id.*; *see* AR 92.

On November 16, 2017, the ALJ issued a decision denying benefits. AR 92–104. At step one, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. AR 94. She also found Plaintiff has not engaged in substantial gainful activity since December 1, 2012 (alleged onset date). *Id.* At step two, the ALJ found Plaintiff had the following severe impairments: history of deep vein thrombosis (DVT) with pulmonary embolism, osteoarthritis, seronegative arthropathy, degenerative disc disease, fibromyalgia, and tendinitis of both rotator cuffs. *Id.* However, the ALJ concluded that Plaintiff's hearing loss, hypercholesterolemia, hypertension, vitamin D3 deficiency, and obstructive sleep apnea were nonsevere. AR 94–95. The ALJ further concluded that his depression and anxiety were nonsevere based on a finding of only a "mild limitation" in all four areas of mental functioning. *See* AR 95–96. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. AR 96.

---

[1] Plaintiff filed a complaint with the Office of Disciplinary Counsel related, *inter alia*, to his representation at this hearing, indicating that he did not know until he was in the hearing that the firm he hired, Binder & Binder, had sent a non-attorney representative to represent him. *See* AR 15. It also appears that the firm failed to file a timely appeal on Plaintiff's behalf. *See* AR 17.

The ALJ found Plaintiff had a residual functioning capacity ("RFC") to:

> occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for 3 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; frequently push/pull with the bilateral lower extremities; occasionally climb stairs, stoop, kneel, crouch, and crawl; frequently balance; never climb ladders/ropes/scaffolds; frequently reach overhead with the left upper extremity; and avoid concentrated exposure to extreme cold, commercial vibration, unprotected heights, and fast moving dangerous machinery.

*Id.* In so finding, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record" and that "[d]espite his impairments, [Plaintiff] has also engaged in a somewhat normal level of daily activity and interaction." AR 101. The ALJ gave little weight to the opinions of Plaintiff's rheumatologist, Irma Rosales, M., and the State agency medical consultants David Jordan, MD, and Marcus Cole, MD. AR 102. The ALJ also considered the assessment of State agency medical consultant William Hernandez, MD, discrediting Dr. Hernandez's functionality opinion for December 2012 to February 2015 but giving "significant weight" to his assessment for February 2015 to the present. *See* AR 102–03. At step four the ALJ found that Plaintiff can perform past relevant work as a dispatcher based, at least in part, on the vocational expert's testimony. AR 103; *see also* AR 130. The ALJ therefore concluded that Plaintiff was not disabled. AR 104.

On July 1, 2020, the Appeals Council denied Plaintiff's request for review,

5

AR 1–6, making it a final decision. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161–62 (9th Cir. 2012). On August 21, 2020, Plaintiff appealed that decision to this Court. (Doc. 1.) The Commissioner filed the certified administrative record on December 21, 2020. (*See* Doc. 7.) The matter was fully briefed as of April 5, 2021. (*See* Docs. 13, 14, 15.)

## ANALYSIS

### I. The Grids

The "Grids" are a "short-hand method for determining the availability and number of suitable jobs for a claimant." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). "A claimant's placement in the appropriate table is determined by applying a matrix of four factors identified by Congress—a claimant's age, education, previous work experience, and physical ability." *Id.* at 1114–15. "For each combination of these factors, they direct a finding of 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements." *Id.* at 1115. Here, Plaintiff initially argued that he should have "gridded out"—i.e., been found disabled—at step four of the analysis. He concedes in his reply, however, that the grids only apply at step five. (*See* Doc. 15 at 2); *Lounsburry*, 468 F.3d at 1114 ("The grids are applied at the fifth step of the analysis . . . ."). This argument therefore fails.

### II. Medical Opinions

6

Plaintiff further argues that the ALJ erred by not giving proper weight, or any weight in some instances, to his treating physicians. In assessing disability, an ALJ may rely on the opinions of three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Under the "treating physician rule,"[2] the ALJ is required to give deference to the treating physician as follows:

> As a general rule, a treating physician's opinion is entitled to substantial weight. Nevertheless, the ALJ need not accept the opinion of a treating physician. If a treating physician's opinion is not contradicted by other evidence in the record, the ALJ may reject it only for clear and convincing reasons supported by substantial evidence in the record. But if the treating doctor's opinion is contradicted by another doctor, the ALJ may discount the treating physician's opinion by giving specific and legitimate reasons that are supported by substantial evidence in the record. The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.

*Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (internal quotation marks, alterations, and citations omitted). Here, the ALJ weighed the opinions of Plaintiff's rheumatologist, Dr. Rosales, and three state agency medical consultants, Drs. Jordan, Cole, and Fernandez. AR 102–03. The ALJ's decision does not

---

[2] The 2017 regulations eliminate the deference given to treating physicians for claims filed after March 27, 2017. *See* 20 C.F.R. § 416.920c(a).

mention, however, the opinions of any of Plaintiff's other treating doctors. Ultimately, the ALJ did not err in weighing the medical evidence in the record.

### A. Dr. Rosales

Plaintiff first argues that the ALJ erred by discounting Dr. Rosales' opinion. Dr. Rosales has been Plaintiff's treating rheumatologist since December 2013. AR 655. She opined in August 2014 that Plaintiff "can occasionally lift and carry 10 pounds; sit for 5 hours in an 9-hour workday; stand and/or walk for 3 hours in an 8-hour workday; has frequent interference to grasp, turn, and twist objects bilaterally; has occasional interference to use hands/fingers for fine manipulations and use arms for reaching bilaterally; and is likely to be absent from work more than three times a month." AR 102 (citing AR 542–46). Dr. Rosales reached a similar conclusion in April 2015, with the slight difference in that Plaintiff "can occasionally lift and carry 10 pounds, sit for 3 hours in a n 8-hour workday; stand and/or walk for 2 hours in an 8-hour workday." *Id.* (citing AR 496–500). Finally, Dr. Rosales opined in September 2015 that Plaintiff "is not able to go back to work at any occupation." *Id.* (citing AR 655). The ALJ accorded "little weight" to Dr. Rosales first two opinions on the ground that they are "not consistent with the record as a whole, *e.g.*, generally unremarkable physical examinations (normal gait and no neurological deficits) and minor x-ray findings" discussed in the ALJ's decision. *Id.* The ALJ gave even less weight to Dr. Rosales' final opinion because

8

it involves a determination "reserved to the Commissioner" and "is not consistent with the record as a whole." *Id.*

As mentioned above, the explanation required to discount Dr. Rosales' opinion depends on whether it is disputed by other doctors in the record. *Ford*, 950 F.3d at 1154. Despite Plaintiff's argument to the contrary, state agency medical consultants Drs. Jordan and Cole determined that Plaintiff's functional capacity was greater than that recognized by Dr. Rosales. *See* AR 102. However, the ALJ also rejected their opinions on the ground that they "did not have the benefit of reviewing the other medical reports contained in the current record and the[ir] opinions are not consistent with the record in its entirety." *Id.* Nevertheless, the ALJ did rely, at least in part, on the physical residual functional capacity assessment of state agency medical consultant Dr. Fernandez. *See* AR 102–03. Dr. Fernandez divided his assessment into two time periods, concluding that Plaintiff was more able from December 1, 2012 to February 12, 2015 and slightly less able from February 13, 2015 to the present. *Id.* The ALJ only accorded weight, however, to Dr. Fernandez' second assessment, i.e., that from February 2015 to the present, Plaintiff

> can occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for 3 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; frequently push/pull with the bilateral lower extremities; occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; frequently balance; never climb ladders/ropes/scaffolds; frequently reach overhead with the left upper

9

extremity; and avoid concentrated exposure to extreme cold, vibration, and hazards.

AR 103 (citing AR 206–08). The ALJ then adopted these limitations for the period of December 1, 2012 through February 12, 2015. *Id.*

Because Dr. Rosales' opinion is disputed by those of the state consulting physicians—both those rejected and considered by the ALJ—the ALJ may reject it "by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Such specific and legitimate reasons exist here. First, Dr. Rosales' own observations are not fully consistent with her functionality assessment. *See id.* (explaining that a discrepancy between a doctor's functionality assessment and her "recorded observations and opinions" is a clear and convincing reason to disregard that assessment). For example, her August 2014 assessment states that Plaintiff's physical limitations "wax[] and wan[e]," AR 542, and he "has flare ups . . . and partial remission" at a variable frequency, AR 543. Her notes from May 2014 further indicate that Plaintiff was responding well to therapy, AR 530, 535, and her treatment plan from May 2016 recommends that he walk regularly, including "[a] daily brisk walk for 30–60 minutes," AR 740.

Second, Dr. Rosales' capacity assessment is also largely inconsistent with Plaintiff's activity levels. Plaintiff himself admitted to using a chainsaw and cutting wood once a week or so for thirty minutes at a time, lifting 10–15 pounds.

10

AR 120–21; *see also* AR 776 ("He has been doing a lot of chainsaw work and loading wood into his pickup truck for the winter."). Similarly, intake notes from an October 2013 visit to Frank Pawlak, FNP at Granite County Medical Center indicate that Plaintiff "is a fairly active individual" and while he has shoulder pain and arthritis, Plaintiff "has become accustomed to [it] . . . and it does not routinely affect his level of activity." AR 487, 658.

Third, other doctors also indicated more range of motion and functionality than that described by Dr. Rosales. For example, in October 2014, Walker J. Ashcraft, M.D. examined Plaintiff and found full range of motion in his shoulders, arms, hands, as well as "essentially normal" gait and station. AR 558. Similar observations were made by David Healow, M.D. in July 2015. *See* AR 653 ("Physical examination reveals gait and station are intact. . . . Patient is able to sit, stand and walk unassisted and can handle objects with both gross and fine manual motor dexterity."). Additionally, x-ray findings from that same period were normal. *See* AR 564–65, 567–68, 676, 735.

As a result, the ALJ's rejection of Dr. Rosales' opinion is supported by substantial evidence.

**B.  State Agency Medical Consultant William Fernandez, M.D.**

Plaintiff further argues that the ALJ erred by giving little weight to Dr. Fernandez's opinion from December 2012 to February 2015 but significant weight

11

to his opinion from February 2015 to the present. As mentioned above, Dr. Fernandez determined that Plaintiff had a light RFC from December 2012 to February 2015 and a sedentary light RFC from February 2015 to the present. AR 205.[3] But Plaintiff's challenge to the unequal weight given to Dr. Fernandez's opinions is confusing insofar as the opinion credited by the ALJ— after February 2015—recognizes a more limited functionality than the earlier period. As a result, Plaintiff benefited from having the ALJ apply Dr. Fernandez's more restricted assessment to the entire period at issue. This challenge therefore lacks merit.

### C.   Other Treating Physicians

Finally, Plaintiff argues that the ALJ erred by failing to consider the opinions of his other treating physicians, specifically Ann Corsi, MD (rheumatology), David Bellamah, MD (vascular surgeon), and Craig McHood, MD (sleep). There is no dispute that Drs. Corsi, Bellamah, and McHood are not mentioned in the ALJ decision. But the government argues that the ALJ is only required to ascribe weight to medical opinions that state specific functional limitations that are helpful in determining an RFC. Both parties are partially right.

As Plaintiff argues, the applicable implementing regulations for the Social Security Act state that the agency "will evaluate every medical opinion," which is

---

[3] Plaintiff was hospitalized in February 2015 for a "fairly extensive right lower extremity DVT." AR 205; *see also* AR 579.

defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(c), (a)(1). Accordingly, the ALJ was required to consider these records, raising the question of what such consideration must look like.

As mentioned above, there is no dispute that the ALJ did not specifically identify or weigh the opinions of Drs. Corsi, Bellamah, or McHood in her decision. But that is not error for two reasons. First, it is unclear what "opinion" Plaintiff believes should have been weighed or credited. Not one of these doctors prepared either a physical or mental functionality assessment. While some of their treatment notes indicate potential disability concerns, they do so only generally, with no specific assessment of Plaintiff's ability to work. *See* AR 636 (Dr. Bellamah stating that Plaintiff's "edema, heaviness, fatigue, discomfort, and CEAP level 3" are "causing disability"), 691 (Dr. Corsi restating Dr. Bellamah's disability note and adding that Plaintiff "continues to be quite limited with walking distances less than 100 yards" and that "[h]e finds it hard to lift his legs if he walks more than 100 yards"), 782 (Dr. McHood relaying Plaintiff's statement that he needs to take a daily nap for 30–40 minutes). As the government argues, adverse medical findings are not necessarily concomitant with a finding of disability as the former does not

13

always interfere with a claimant's ability to work. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999). And, contrary to Plaintiff's argument, Dr. Corsi's conclusory reference to Dr. Bellamah's disability conclusion is not an expression of her medical opinion. *Cf. Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (permitting ALJ to reject opinions that are "brief, conclusory, and inadequately supported by clinical findings").

Second, the ALJ's decision thoroughly recites Plaintiff's condition as evaluated by Dr. Bellamah in his June 12, 2015 visit, *see* AR 99–100 (citing AR 635–36), and as evaluated by Dr. Corsi in November 2015, *see* AR 100 (citing AR 691–93, 735), and August 2017, *see* AR 101 (citing AR 776–78). It also references his nonsevere obstructive sleep apnea. *See* AR 95 (citing AR 782). The ALJ also specifically recognized that Plaintiff, consistent with Dr. Corsi's observation, "can only walk 100 feet before needing to stop and rest for five minutes." AR 97 (citing AR 369). The ALJ also relied on medical visits and observations of other examining or treating providers. *See* AR 458–62 (David A. Brooks, Ph. D), 487–89 (Frank Pawlak, FNP – Granite County Medical), 547–50 (Susan Day, Ph.D.), 558 (Walker J. Ashcraft, MD), 645–53 (David Healow, MD). Thus, contrary to Plaintiff's position, the ALJ considered the complete medical record in reaching her decision.

III. **Mental Impairments**

14

Plaintiff argues that the ALJ did not fully consider his mental impairments and that the ALJ did not adequately assess the side effects of prescription mental health medications. Neither argument is persuasive.

"According to 20 C.F.R. § 404.1520a(c)(3), the ALJ is required to rate the degree of functional limitations in four areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Hoopai v. Astrue*, 499 F.3d 1071, 1077–78 (9th Cir. 2007). Here, the ALJ found that Plaintiff's mental impairments did not cause more than a minimal limitation in all four areas and therefore were not severe. AR 95–96. Although Plaintiff argues that he was forced to stop working multiple jobs due to his reduced cognitive function, he does not identify any specific error in the ALJ's findings under the four functional areas. Because Plaintiff's challenge appears to be based simply on a different view of the evidence, it lacks merit.

Plaintiff further argues that the ALJ did not adequately assess the side effects of prescription mental health medications. While Plaintiff outlines the side effects of his medications in some detail in his opening brief, (*see* Doc. 13 at 9), he does not cite to anywhere in the record that would support his assessment or connect his medications to his diminished mental abilities. To the contrary, the record shows that the ALJ considered his medications and determined his reaction was positive apart from his weight gain. *See* AR 101.

## IV. Credibility

Plaintiff argues that the ALJ erred by failing to credit his subjective assessment of his own pain and/or symptoms. "In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012), *superseded by reg. on other grounds*. "First, the ALJ must determine whether there is objective medical evidence of an underlying medical impairment which could reasonably expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks omitted). Second, "[i]f the claimant has presented such evidence, and there is no evidence of malingering, the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotation marks omitted). In so deciding, the ALJ "may use ordinary techniques of credibility evaluation" and consider whether the claimant's symptoms are inconsistent with his daily activities. *Id.* at 1112–13 (internal quotation marks omitted).

Plaintiff testified that even minor activity results in pain all the way from his elbows to his lower back and that the pain lasts for days. *See* AR 121. Complaints of ongoing, unrelieved pain were also recorded by his physicians and incorporated into his medical reports. However, Plaintiff also testified that he uses stairs daily to access his residence, drives without any issues, and cuts firewood, lifting 10 to

15 pounds. AR 119–21. He also admitted to doing laundry, mowing the yard, reading, watching television, and doing puzzles and sudoku. *See* AR 366, 368; *see Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."). And, as discussed above, at least one doctor described him as "a fairly active individual." AR 487, 658. The ALJ also noted that there were "significant gaps" in his treatment history and work activity after his alleged onset date. *See* AR 101. As a result, the ALJ's conclusion that Plaintiff's "allegations [are] less than fully consistent with the evidence," AR 101, is supported by substantial evidence.

Although proffered somewhat haphazardly as part of his credibility argument, Plaintiff insists that the ALJ separately erred by failing to independently analyze his fibromyalgia. The ALJ determined at step two that Plaintiff's fibromyalgia was a severe impairment, AR 94, and that impairment was discussed in her decision, *see e.g.*, AR 99 (noting that Plaintiff "had pain in six fibromyalgia areas"). Plaintiff's argument is too conclusory and vague for substantive consideration. But, to the extent he argues the ALJ had a duty to specifically address fibromyalgia, that argument lacks merit because the ALJ clearly considered the limitations arising from Plaintiff's conditions. *See Baldwin v. Astrue*, 2010 WL 1946902, at *2 (C.D. Cal. May 10, 2010) (finding that failure to

17

list fibromyalgia as severe impairment at step two was harmless when it was considered in limitations analysis at step four).

V. **Obesity**

Finally, Plaintiff argues that it was error for the ALJ to not consider his obesity despite its documentation in the record. However, the Commissioner persuasively argues that Plaintiff's weight fluctuated throughout the medical records, *see* AR 658 (Oct. 14, 2013: 241 pounds), 568 (Dec. 5, 2014: 220 pounds), 663 (April 21, 2015: 223 pounds), and none of the medical records actually reference obesity, *see* AR 646 (describing Plaintiff's weight as "mildly above ideal weight" in July 2015). Moreover, Plaintiff does not point to any evidence—medical record or otherwise—that indicates his weight impacted his functionality. Finally, the only specific reference to Plaintiff's weight appears to have been a side effect of his Lyrica medication, which he was not on until 2017, *see* AR 769 (June 12, 2017: 265 pounds), 772 (July 17, 2017: 257 pounds); *see also* AR 774 (describing "abnormal weight gain" in "problem list" for July 17, 2017 visit), and this fact was actually considered by the ALJ, *see* AR 101. It is therefore unclear whether, if Plaintiff's weight was an impairment, it would meet the Social Security Act's 12-month durational requirement. *See Barnhart v. Walton*, 535 U.S. 212, 217–22 (2002). The ALJ did not err in not considering Plaintiff's weight as an impairment.

## VI. RFC

The ALJ determined that Plaintiff had a "light" RFC. Plaintiff insists that this conclusion contradicts the opinions of his treating physicians who said he could not sit for significant periods of time. Pursuant to the implementing regulations, "[t]o be considered capable of performing a full or wide range of light work, you must have the ability to substantially do the[ stated] activities." 20 C.F.R. § 404.1567(b). But as discussed above, the ALJ did not err in weighing the medical evidence and medical opinions as she did. Nor did she err in assessing his mental impairments or by not finding his weight to be an impairment. As a result, the RFC was based on a more functional assessment than that argued by Plaintiff.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that the Commissioner's denial of benefits is AFFIRMED.

DATED this 16th day of June, 2021.

Donald W. Molloy, District Judge
United States District Court